KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER      Bar No. 066401
NANCY BARRON         Bar No. 099278
ELLIOT CONN          Bar No. 279920
445 Bush St., 6th Floor
San Francisco, CA  94108
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901
bryan@kbklegal.com
elliot@kbklegal.com

Scott D. Owens
*admitted pro hac vice*
Scott D. Owens, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, Florida 33019
Phone: (954) 589-0588
Fax: (954) 337-0666
scott@scottdowens.com

Attorneys for Plaintiffs Yolanda Cosper, Fred Lumpkin, and Sebastian McGhee, and the putative class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA COSPER, FRED LUMPKIN, and SEBASTIAN MCGHEE, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>VEROS CREDIT, LLC<br><br>Defendant.<br>_____/ | Case No. 2:15-cv-01752-GEB-CKD<br><br>CLASS ACTION<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Yolanda Cosper, Fred Lumpkin, and Sebastian McGhee ("Plaintiffs"), through their attorneys, on behalf of themselves and all others similarly situated, allege on personal information and upon information and on belief based upon, *inter alia*, the investigation made by and through their attorneys, as follows.

//

1

## INTRODUCTION

1.     The Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*, ("TCPA") was enacted in response to widespread complaints to protect the privacy interests of consumers by placing restrictions on unsolicited and unauthorized telephone calls made through the use of automatic telephone dialing systems ("ATDS").  Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call" and that banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§2(10-13) (Dec. 20, 1991) codified at 47 U.S.C. §227. The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of any ATDS to communicate with others by telephone in a manner that would be an invasion of privacy.  An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.  To this end, The TCPA prohibits any person from making any call (other than a call made for emergency purposes or with the prior express consent of the called party) to any cellular telephone using any ATDS.

2.     Within the four years preceding the filing of this action, Defendant Veros Credit, LLC, and agents and employees acting on its behalf, Veros Credit, LLC impermissibly and unlawfully placed numerous outbound telephone calls to Plaintiffs' and the putative Class Members' cellular telephones using an Automated Telephone Dialing System with a predictive dialer or a prerecorded or artificial voice.  Specifically, Veros Credit, LLC has violated the TCPA by making debt collection phone calls, using an ATDS, to cell phones of persons listed as references on borrowers' loan applications, none of whom gave Veros Credit prior express consent to call them for that purpose.

3.     This case concerns a particularly intrusive practice; namely that of a lender calling a borrower's third-party credit references in an attempt to collect a debt from the borrower. Veros Credit is in the business of extending auto financing to consumers throughout the United States.  A significant part of this business involves attempting to collect on accounts when they become delinquent.

4.     As part of its policies and procedures, Veros Credit collects vast amounts of

2

1   personal information about its borrowers, including the telephone numbers of its borrowers'

2   references, who have no business relationship with Veros Credit.  Nonetheless, Veros Credit

3   harvests this information so that, in the event a borrower defaults on a payment, Veros Credit can

4   pressure a borrower to pay the debt by harassing third party acquaintances of the borrower.

5   These calls have the natural and intended effect of intruding on the privacy and seclusion of the

6   recipients of such calls, in an effort to shame the borrower into payment through peer pressure.

7          5.      Veros Credit places these calls to the borrower's references using and automated

8   telephone dialing systems, and/or by using an artificial or prerecorded voice.  Veros Credit does

9   not obtain the consent of the recipient for these calls.

10          6.      Plaintiffs Yolanda Cosper, Fred Lumpkin, husband and wife, and Sebastian

11   McGhee are among those called parties whose cellular telephone number was provided to

12   Defendant by third-party borrowers as credit references.  Plaintiffs and the Class did not consent,

13   expressly or by implication, at any time whatsoever, to be called at the number assigned to their

14   cellular telephone for these purposes.

15          7.      Veros Credit's unwanted calls caused Plaintiffs the very harm that Congress

16   sought to prevent – a "nuisance and invasion of privacy."  The calls wasted Plaintiffs' time and

17   money, as they trespassed on and interfered with Plaintiffs' rights and interest in their cellular

18   telephones.  The calls were an intentional intrusion upon their solitude or seclusion, disrupting

19   their peace and quiet; the calls tied up their phone lines, trespassed on plaintiffs'

20   telecommunications equipment for their own purposes, prevented use of the phone for other calls

21   during the time of the intrusion, and used up the limited space on their voice mail.

22          8.      Plaintiffs bring this action individually and on behalf of a Class of all persons

23   similarly situated, as more particularly defined below.

24                                   **PARTIES**

25          9.      Plaintiff Yolanda Cosper ("Cosper") is a natural person and a citizen of Vallejo,

26   State of California.

27          10.     Plaintiff Fred Lumpkin ("Lumpkin") is a natural person and a citizen of Vallejo,

28   State of California.

1    11.    Plaintiff Sebastian McGhee ("McGhee") is a natural person and a citizen of Los

2    Angeles, State of California.

3    12.    Defendant Veros Credit, LLC, is a Nevada limited liability company located in

4    Carson City, State of Nevada, with offices in California, Nevada and Utah. Veros Credit

5    specializes in the acquisition and servicing of subprime automotive loans.

6                          **JURISDICTION AND VENUE**

7    13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

8    §1331 as the claims alleged herein raise a federal question.  This Court also has jurisdiction

9    pursuant to 28 U.S.C. §1332(d)(2) because this matter is a class action in which Class members

10   are citizens of a different state than that of Defendant and the amount in controversy (including

11   attorneys' fees), upon information and belief, exceeds $5,000,000, exclusive of interest and

12   costs.

13   14.    Declaratory relief is available under 28 U.S.C. §2201.  Injunctive relief is

14   available under 47 U.S.C. §227(b)(3)(A).

15   15.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial

16   part of the events or omissions giving rise to the claims in this case occurred in this District.

17   **FCC RULINGS AND OTHER LEGAL DECISIONS IMPACTING CLAIMS BROUGHT**
     **UNDER THE TELEPHONE CONSUMER PROTECTION ACT**
18

19   16.    Congress has vested the Federal Communications Commission ("FCC") with the

20   authority to issue interpretations, rules and regulations to implement the TCPA, and the FCC has

21   done so in a series of Orders broadly interpreting the definition of an ATDS as technology has

22   evolved. 47U.S.C.§227(b)(2).   According to findings by the FCC, such calls as those alleged

23   herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a

24   greater nuisance and invasion of privacy, and such calls can be costly and inconvenient.  The

25   FCC also recognized that wireless customers are charged for incoming calls whether they pay in

26   advance or after the minutes are used. *Rules and Regulations Implementing the Telephone*

27   *Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd

28   14014 (2003).

17.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, §11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion,

Id. at §12; Congress also specifically found that:

> the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call….

*Id.* at §§ 12-13.

18.     The FCC has ruled that the ability to dial numbers without any human intervention in the calling process is the hallmark of an automatic telephone dialing system (i.e., auto-dialer).  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008,* CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶¶11-13; *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 2003 WL 21517583, 18 F.C.C.R. 14014, ¶132 (Fed. Commc'n Cmm'n July 3, 2003).

19.     Following Congress' directive, the FCC has expanded the definition of ATDS to include predictive dialers (In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, 18 FCC Rcd 14014, 14092-93 (June 26, 2003). at ¶133.

20.     Furthermore, the FCC has specifically ruled that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" within the TCPA.  *2003 TCPA Order,* 18 FCC Rcd 14092-3 at ¶133.

21.     The FCC has also reaffirmed and repeated its prior ruling that the term "capacity" requires present ability rather than future possibility, because a broad reading of the statute is required "to ensure that the restriction on autodialed calls not be circumvented." *In re Matters of*

5

1    *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

2    Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72

3    (released July 10, 2015), ¶19.  Moreover "capacity" includes systems that include hardware and

4    software that can be paired to function together to act as an ATDS, even where the equipment

5    would not be able to do so separately.  *Id.*, ¶10

6        22.     With respect to whether a device is considered an "automatic telephone dialing

7    system" for purposes of the TCPA, the Ninth Circuit has specifically noted that "a system need

8    not actually store, produce, or call randomly or sequentially generated numbers, it need only

9    have the *capacity* to do it."  *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009)

10    (emphasis added).

11        23.     The FCC also ruled "We also reject [the] argument that the Commission should

12    adopt a 'human intervention' test by clarifying that an autodialer is not an autodialer unless it has

13    the capacity to dial numbers without human intervention. Because the Commission has

14    previously rejected a restrictive interpretation of autodialer in favor of one based on a piece of

15    equipment's potential ability, we find that [the] argument amounts to a simple variation on the

16    'present ability' arguments we reject above."  *Id.* ¶20.

17        24.     The TCPA has a four year statute of limitations pursuant to 28 U.S.C. § 1658.

18                  **FACTS**

19    **A.     Veros Did Not Have Consent to Call Plaintiffs to Collect on Third-Party Debts**

20        25.     Veros account holders, not parties to this action, obtained financing for vehicles

21    through Veros.  At some point thereafter, the account holders fell behind on their payments to

22    Veros.

23        26.     Veros then proceeded to place multiple calls to the Plaintiffs an attempt to collect

24    payment from the relevant borrowers.  Veros did not have consent to do so.  In fact, each

25    Plaintiff was a total stranger to the transaction between the borrowers and Veros.  None of the

26    Plaintiffs were co-obligors on the financing.

27    **B.     Veros' Calls to Plaintiffs Cosper and Lumpkin**

28        27.     At all times relevant herein Cosper and Lumpkin had a cell phone, number XXX-

XXX-3485, for which they were charged a monthly fee.  An account holder provided Veros with Cosper's and Lumpkin's names or contact information as a reference.

28.     In an attempt to collect from the account holder, Veros used an ATDS to call Cosper's and Lumpkin's cellular telephone number, XXX-XXX-3485.

29.     Cosper and Lumpkin received at least 5 calls from Veros to their cellular telephone that utilized an ATDS beginning sometime after August of 2014.

30.     On the occasions that Cosper and Lumpkin picked up the phone calls, they were greeted by Customer Service Specialist who identified herself as Jennifer.  Each of these calls were attempts to collect a debt from the third-party account holder that listed Cosper and Lumpkin as a personal reference.  In each call, Jennifer asked Plaintiffs if they had seen the account holder and asked Plaintiffs to contact the account holder because the account holder was late paying their car note.  And in each call, Jennifer asked Plaintiffs to contact the account holder and tell the account holder that if they do not contact Veros Credit, LLC, Veros would repossess the account holder's vehicle.  Veros used the same telephone number, same telephone system, and same agent, Jennifer, to call the account holder in a further attempt to collect from the account holder.

31.     These unauthorized calls harmed Cosper and Lumpkin because they caused Cosper and Lumpkin to suffer a nuisance and an invasion of privacy.  Further, the calls wasted Cosper's and Lumpkin's time and money, as the calls required them to take time out of their schedule to deal with the calls, the calls trespassed on their use of the phone for which they were charged a monthly fee, the calls used up space on their voicemail, and the calls depleted the battery on their cellular telephone.

32.     At all times relevant, Cosper and Lumpkin were the sole subscribers or customary users of the cellular telephone number XXX-XXX-3485.  At no point did Cosper and Lumpkin provide express consent for Veros to call their cellular telephone, nor did any third-party with "common authority" provide prior express consent.

33.     None of the calls to Cosper and Lumpkin's cellular telephone were placed for an "emergency purpose" or with "prior express consent of the called party" within the meaning of

1    47 U.S.C. §227(b)(1)(A).

2         34.     At all times relevant to this complaint, Cosper and Lumpkin maintained exclusive

3    custody and control over the cellular telephone and number at issue.

4    **C.      Veros' Calls to Plaintiff McGhee**

5         35.     At all times relevant herein McGhee had a cell phone, number XXX-XXX-3833,

6    for which he was charged a monthly fee. An account holder provided Veros with McGhee's

7    name or contact information as a reference.

8         36.     In an attempt to collect from the account holder, Veros used an ATDS to call

9    McGhee cellular telephone number, XXX-XXX-3833.

10         37.     McGhee received no less than 10 calls from Veros to his cellular telephone that

11    utilized an ATDS beginning sometime after August of 2013. On each occasion that McGhee

12    picked up his telephone and answered, there would be a two to three second delay before a Veros

13    agent responded; this is a classic hallmark of an ATDS.

14         38.     These unauthorized calls harmed McGhee because they caused McGhee to suffer

15    a nuisance and an invasion of privacy. Further, the calls wasted McGhee's time and money, as

16    the calls required him to take time out of his schedule to deal with the calls, the calls trespassed

17    on his use of the phone for which he was charged a monthly fee, the calls used up space on his

18    voicemail, and the calls depleted the battery on his cellular telephone.

19         39.     At all times relevant, McGhee was the sole subscriber or customary user of the

20    cellular telephone number XXX-XXX-3833. At no point did McGhee provide express consent

21    for Veros to call his cellular telephone, nor did any third-party with "common authority" provide

22    prior express consent.

23         40.     None of the calls to McGhee's cellular telephone were placed for an "emergency

24    purpose" or with "prior express consent of the called party" within the meaning of 47 U.S.C.

25    §227(b)(1)(A).

26         41.     At all times relevant to this complaint, McGhee maintained exclusive custody and

27    control over the cellular telephone and number at issue.

28    *//*

**D.     Veros' Policies**

42.     In an effort to locate, and to collect from its account holders, Veros Credit, LLC, within the four years immediately preceding the filing of this action, used predictive dialers and automated dialers, under the supervision of its Dialer Administrators and Business Reporting Analysts, to place outbound calls to Plaintiffs' and other references' cellular telephones.  Veros Credit, LLC employees Data Administrators, Business Reporting Analysts, whose are responsible for "daily dialer campaign," are "[r]esponsible for the daily readiness of call center automated dialer applications," "[oversee] predictive dialer functions, "[p]rovide backup assistance for Dialer Administrators for dialer management, troubleshooting, training, strategy updates and execution," and "[p]articipate in outbound calls using an automated dialer system." See **Exhibits A** and **B**.  Such dialers were used to contact Plaintiffs.

43.     Veros Credit, LLC, employs Customer Service Specialists that are "responsible for assertively persuading borrowers to bring the account current, to collect payments and recoverable amounts, as well as, educate and encourage them to make timely payments." (**Exhibit A**)

44.     In her capacity as an Customer Service Specialist at Veros Credit, LLC, Jennifer used the automated dialer system to contact both Plaintiffs Cosper and Lumpkin and the account holder in order to "assertively [persuade the account holder] to bring the account current." Plaintiffs are informed and believe, and on that basis allege, that Jennifer was a Customer Service Specialist at Veros.

45.     The only mention of "outbound calls" in the job posting for Customer Service Specialists is the following: "Participate in outbound calls using an **automated dialer system**." (**Exhibit A**).  Based off of this posting, Customer Service Specialists *only* use the Veros automated dialer system to place outbound calls.

46.     Furthermore, on each occasion that McGhee picked up his telephone and answered calls from Veros, there would be a two to three second delay before a Veros agent responded; this is a classic hallmark of an ATDS.

47.     Veros Credit, LLC used equipment that has the capacity to store or produce

Second Amended Complaint for Damages and Equitable Relief.docx

telephone numbers to be called, using random or sequential number generator and to dial such numbers, also known as an "automatic telephone dialing system," as defined by 47 U.S.C. §227(a)(1), or an artificial or prerecorded voice to place numerous calls and/or text messages to the cellular telephone belonging to Yolanda Cosper and her husband, Fred Lumpkin, and Sebastian McGhee.

## CLASS ACTION ALLEGATIONS

48.     It is Defendant's policy and practice to place, in the course of business, autodialed calls or calls using an artificial or prerecorded voice to individuals whose cellular telephone numbers were given to Veros Credit, LLC by third party borrowers (or putative borrowers).

49.     Therefore, Plaintiffs bring this class action on behalf of themselves and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (3).  This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

50.     The proposed Class consists of:

All persons in the United States:

(a)     to whose cellular telephones Defendant placed one or more non-emergency calls within the four (4) years prior to the filing of this action;

(b)     using an automatic telephone dialing system or an artificial or prerecorded voice; and

(c)     who's cellular telephone number was listed as a personal reference on a loan application for a loan with Defendant.

51.     The members of the Class are so numerous that joinder of all claims would be impracticable.  While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and on that basis allege, that there are more than 40 members of the class.

52.     There are questions of law and fact common to the Class which predominate over any questions affecting individual Class members.  The predominant common questions include:

(a)     Whether Defendant used an automatic telephone dialing system or an

10

1  artificial or prerecorded voice within the meaning of the TCPA and

2  applicable FCC regulations and orders, to place the calls at issue;

3  (b)  Whether Class members can be deemed to have given express prior

4  consent to such calls merely by having been named on a credit application

5  by a borrower who had no authority to give such consent;

6  (c)  Damages, including whether the violations were negligent, willful or

7  knowing.

8  53.  Plaintiffs' claims are typical of the claims of the other members of the Class.

9  Defendant's conduct has caused Plaintiffs and members of the Class to sustain the same or

10  substantially similar injuries and damages.  Defendant has acted in a uniform manner with

11  respect to Plaintiffs and the other Class Members.  Plaintiffs have no interests antagonistic to the

12  interests of the other members of the Class.

13  54.  Plaintiffs will fairly and adequately represent and protect the interests of the

14  members of the Class.  Plaintiffs are members of the Class and do not have any conflict of

15  interest with other Class members.  Plaintiffs have retained and are represented by competent

16  counsel who are experienced in complex class action litigation and claims involving violations of

17  the Telephone Consumer Protection Act.

18  55.  The nature of this action makes a class action the superior and appropriate

19  procedure to afford relief for the wrongs alleged herein.  There will be no difficulty in the

20  management of this class action.  Individualized litigation presents the potential for inconsistent

21  or contradictory judgments.  A class action presents far fewer management difficulties and

22  provides the benefits of single adjudication, economy of scale, and comprehensive supervision

23  by a single court.

24  **FIRST CLAIM FOR RELIEF**
**(Violations of The Telephone Consumer Protection Act)**

25

26  56.  Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

27  57.  The TCPA provides that it is unlawful for any person to make a non-emergency

28  call using an automatic telephone dialing system or an artificial or recorded voice to any cellular

11

1   phone service without prior express consent of the called party.  Plaintiffs and the Class

2   Members have a legally protected interest in being free from such calls.

3       58.    Veros violated the TCPA by impermissibly placing calls to the cellular telephones

4   of Plaintiffs and the members of the class using an ATDS or an artificial or prerecorded voice

5   without their prior express consent.

6       59.    Plaintiffs and the members of the class have a legally protected interest in being

7   free from the intrusion of autodialed calls and calls using an artificial or prerecorded voice.

8   These unauthorized and offensive calls harmed Plaintiffs and the members of the proposed class,

9   because they caused Plaintiffs and the members of the proposed class to suffer a nuisance and an

10  invasion of privacy, all as more particularly described above.  Such harm was fairly traceable to

11  Veros' violations of the TCPA.

12      60.    Veros has policies, practices or procedures of placing calls to cell phones using an

13  ATDS or artificial or prerecorded voice regarding the collection of alleged debts, and for other

14  purposes, without the prior consent of the called parties.

15      61.    Veros' violations were negligent, or alternatively, they were willful or knowing.

16  47 U.S.C. §312(f)(1).

17      62.    That any subscriber to cell phone service should have to field calls for the debts

18  of any family member, friend or mere acquaintance is offensive, and the very harm Senator

19  Hollings referred to as the "scourge of modern civilization." Plaintiffs and the proposed class are

20  precisely the persons sought to be protected by the TCPA, and are thus entitled to the full

21  statutory remedies allowed by law.

22                              **PRAYER FOR RELIEF**

23      WHEREFORE, Plaintiffs request that the Court grant the following relief:

24  A.    Certify this matter as a class action under Rule 23(b)(2) and 23(b)(3).

25  B.    Appoint the named plaintiffs as class representatives.

26  C.    Appoint the undersigned as Class Counsel for the classes to be represented.

27  D.    Award, statutory damages of $500 per violation determined to be negligent

28  E.    Award statutory damages of $1,500 per violation determined to be willful;

F.      Grant a declaration that Veros' equipment and messages are regulated by the TCPA;

G.      Enter an order enjoining Veros from further violations of the TCPA; namely prohibiting Veros from placing non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice to persons who had no personal business relationship with Veros and thus had not given consent for such calls;

H.      Grant costs of suit incurred herein;

I.      Award reasonable attorneys' fees as part of a common fund, if any; and

J.      Provide such other or further relief as the Court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiffs demand trial by jury.

Dated: July 8, 2016                          KEMNITZER, BARRON & KRIEG, LLP


                                   By:      _/s/ Bryan Kemnitzer_____
                                            BRYAN KEMNITZER
                                            ELLIOT CONN
                                            Attorneys for Plaintiffs YOLANDA COSPER,
                                            FRED LUMPKIN, and SEBASTIAN McGHEE and
                                            the Proposed Class